

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00122-CV

## IN THE INTEREST OF L.A.S., A CHILD

**From the County Court at Law No. 2**
**Johnson County, Texas**
**Trial Court No. D201300051**

## MEMORANDUM OPINION

John S. appeals from a judgment that terminated his parental rights to his child, L.A.S. TEX. FAM. CODE ANN. § 161.001(b) (West 2014). After a jury trial, the jury found that John had committed the predicate acts set forth in Section 161.001(b)(2)(D), (E), (F), (N), and (O) and that termination was in the child's best interest. John complains that the evidence was legally and factually insufficient for the jury to have found that he committed the predicate acts set forth in Sections 161.001(b)(2)(D) and (E) and factually insufficient for the jury to have found that termination was in the child's best interest. Because there are unchallenged grounds for termination of John's parental rights and the

evidence was factually sufficient for the jury to have found that termination was in the child's best interest, we affirm the judgment of the trial court.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, John argues that the evidence is legally and factually insufficient to support the jury's finding that he had engaged in one or more of the acts or omissions necessary to support termination of his parental rights. More specifically, John contends that the evidence does not support termination of his parental rights under either subsections (1)(D) (endangerment by conditions or surroundings) or (1)(E) (endangerment by conduct) of Texas Family Code Section 161.001(b). However, John does not challenge the jury's findings on the grounds for termination alleged under subsections (1)(F) (failure to support child), (1)(N) (constructive abandonment), or (1)(O) (failure to comply with a court-ordered service plan).

A finding of only one ground for termination alleged under Section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, to be successful on appeal, John is required to establish that the trial court's findings on all of the Department's pleaded grounds are unsupported by the evidence. *See Fletcher v. Dep't of Family & Protective Servs.*, 277 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2009, no pet.). When a parent does not challenge an independent ground that may support an order of termination, we do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361-62.

Instead, we must overrule the challenges the parent has chosen to assert. *See In re A.V.*, 113 S.W.3d at 361-62; *Fletcher*, 277 S.W.3d at 64.

Because John does not challenge every ground upon which the jury could have based its decision to terminate his parental rights, we do not address the unchallenged findings or the grounds raised in his brief. Accordingly, we overrule John's first and second issues.

BEST INTEREST

In his third issue, John argues that the evidence was factually insufficient for the jury to have found that termination of the parent-child relationship was in the best interest of the child. In a factual sufficiency review, we must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To determine if the evidence is factually sufficient, we give due deference to the factfinder's findings and determine whether, on the entire record, the factfinder could reasonably form a firm conviction or belief that the termination of the parent's parental rights would be in the child's best interest. *In re H.R.M.*, 209 S.W.3d at 108; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

There are several factors that the trier of fact in a termination case may consider in determining the best interest of the child, which include: (a) the desires of the child, (b) the emotional and physical needs of the child now and in the future, (c) the emotional

and physical danger to the child now and in the future, (d) the parental abilities of the individuals seeking custody, (e) the programs available to assist these individuals to promote the best interest of the child, (f) the plans for the child by these individuals or by the agency seeking custody, (g) the stability of the home or proposed placement, (h) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d at 27. Some listed factors may be inapplicable to some cases while other factors not on the list may also be considered when appropriate. *Id*.

L.A.S. was almost five years old at the time of trial. John had been incarcerated for the majority of L.A.S.'s life. He was convicted of theft and placed on community supervision, which was revoked because he no longer wished to be on community supervision, which led to his failure to report and the commission of a new offense, forgery. He went to prison, was paroled, and was revoked because of failing to report again. John had been charged with robbery and evading arrest as well. He had spent approximately one year not incarcerated in 2013 and then a few months out approximately a year after that. During his release, John did not provide any support for L.A.S., although he was working at a job making $500-600 per week, and only visited with him six or seven times once a month for one hour as limited by a court order during the year he was not incarcerated. John had made no attempts to visit with L.A.S. while

he was not incarcerated because he claimed that he was working on himself. He also made no efforts at communicating with L.A.S. other than the one hour visits. John had not seen L.A.S. since 2013.

L.A.S. suffered from significant emotional issues with abandonment, anger, and aggression. L.A.S. had been placed in a foster home where he was bonded with the foster parents and was attending counseling to address his issues. L.A.S. told his counselor that he felt safe with his foster parents and wanted to stay with them. L.A.S. demonstrated significant fear and abandonment issues when thinking about not being in the home of his foster parents, who wished to adopt him. His foster parents were supportive of L.A.S. and worked with him to overcome his issues. L.A.S. had been moved around often during his life with his mother and other relatives, but had spent a large portion of time with the foster parents over his lifetime.

While living with his foster parents, L.A.S. attended a Montessori school and had been accepted to a college preparatory school because of the reduced class sizes and was participating in extracurricular activities such as swimming, taekwondo, and gymnastics. The foster parents were also in the process of adopting another boy whom L.A.S. loved and considered to be his brother.

John's plan for L.A.S. was for them to live with his father upon his release from incarceration until relocating to Port Aransas where he would have a job painting houses. John stated that L.A.S. could live with family members until his release.

L.A.S.'s mother had signed a voluntary affidavit of relinquishment of her parental rights to L.A.S. prior to the trial. L.A.S.'s mother testified that she was afraid of John and that John had been violent during their time together, which was prior to and for a short time after L.A.S. was born. She also testified that she and John would use methamphetamine, mushrooms, and GHB while they were together.

Giving due deference to the jury's findings and based on our review of the entire record, we find that the jury could have reasonably formed a firm conviction or belief that the termination of John's parental rights was in L.A.S.'s best interest. We find that the evidence was factually sufficient for the jury to have found that termination was in the best interest of the child. We overrule issue three.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed August 17, 2016
[CV06]

